The last case on for argument today is Williams v. Buffalo Public Schools. I'm sorry. Good morning. I have a document to have a copy of a case that I wanted to provide you all a copy of. Is it? Is it the name of a case that has been decided? Yes. Is that the Morrison case? Yes. Yes. We all have that. We know that. Okay. Thank you, sir. Yes. No, thank you, Ms. Williams. Um, actually, Mr. Moore, I think, wrote the letter that sent that to us so that we were all aware of it. Okay. Sure. Your copy is in the mail if it hasn't gotten to you yet. Very good. Members of the court, may it please the court, I am Yamilette Williams-Aplanit. My argument is simply a case of a loyal and faithful educator who was contracted by Buffalo Education Board to perform a two-year service in which was considered a failing school district. My background includes extensive experience working in urban districts with great difficulties for which I was specifically recruited and hired for the position of Chief of Curriculum Assessment and Instruction, for which I managed a team of 40 individuals in multiple departments, as well as I had additional duties that I assumed over the period of time for that of an interim Chief of Curriculum of, I'm sorry, School Improvement and Interim Deputy Superintendent with the Superintendent Brown. I also want to again bring to your attention, Your Honor, the recent decision, the summary order for which you mentioned earlier with Morrison versus the Buffalo case with . . . Ms. Williams, can I ask you a question about that? Yes. In the Morrison case, it appeared that the contract itself had a blank Exhibit B, and therefore the job description was not attached to and incorporated in the contract, and the court focused on the absence of an explicit reference to the qualifications and certifications that Ms. Morrison needed to have. I had a little confusion about the Exhibit Bs in your case. Did your contract include an Exhibit B that did include the job description, or did it not? Forgive me, I don't have full memory. It's my understanding that it was my attachment to it at the time of the application, but that the contract itself was not specific to any certification, that it was only stated on the actual job position itself. So, the job position wasn't stapled onto it and part of your contract? To the best of my knowledge. Thank you. I'm sorry. I'm sorry. Yes, certainly. That's helpful to me. Okay. So, in the summary order, referencing particularly pages 5 and 6, where it may be plausible and inferred that the defendant waived the agreement requirements of the New York certification, and at least at the time of the appointment, and also the reference to the awards.com, LLC, and the Kinko's Inc. Incorporated 2007, which explains that notwithstanding no waiver clause, where no non-breaching party continues to perform or accept performance after breach, it loses rights to terminate contract based on prior breach and only retains option to determine, rather, to terminate based on subsequent breach. And accordingly, the court vacated the dismissal of the breach of contract claim and remanded it for further proceeding. So, at the time when I came to the Buffalo Public Schools, I held an Oklahoma and Florida certification for administrative certificate. And I was hired anyway and waived the certification. And that is not an uncommon practice. And because I was the best qualified candidate, notwithstanding any of the New York state certificates, which I fully disclosed to the superintendent, the board, and everybody else who was involved in the hiring process, I was hired and completed the state certification process. Received a letter from the district's HR department that told me that I had met the requirements. I'm sorry. I know you're racing against the clock, but you and Mr. Moore are the last people, so you can slow down a little bit. Okay, I'm just doing what I was told. We'll hear you out and we'll, of course, hear Mr. Moore. Thank you, Your Honor. I just fully disclosed to the superintendent, the board, and everyone who was involved in the process of hiring that I did not come with that particular certification. But I did complete the state certification process and received a letter from the district's HR department that I had met the requirements for that certification in December of 2013 with the school leader certification and proceeded with my administrative duties as hired. And then, however, the contract was eventually ratified by the board. Along the way, however, the superintendent and Mr. Brown, who was the director of the talent management, advised me and my colleague, Dr. Morrison, to obtain additional certifications, knowing that I had the proper qualifications, which was publicly stated, and it was simply a matter of securing documentations to their liking. So along with Dr. Morrison, we obtained two separate certifications, and the certifications I obtained were both the one in December of 2013 and in March of 2014, which were exactly what they had directed me to do twice, and were obtained and then were considered to be in compliance. Then the board, at some point, decided to, after I had secured the last requested certification from the State Department of Ed. Within the time you were to have done that? Say that again, sir. You secured them within the time that you were instructed to do so? Yes. Yes, I just want to make sure. So after I had secured those certifications, again, from the State Department of Ed, the board voted 8-0 to terminate me on the 2nd of April of 2014. And these actions have placed my professional career record in jeopardy and in limbo, Your Honors. This is a case of being fair. There was a disparate legal bargaining power. The contract itself was negotiated from the standpoint of the board having multiple in-house counsel and a retained law firm. I came in from out of the state not being familiar with the New York certification process and relied upon them to guide me, like other districts where I have secured similar professional work and done by obtaining the proper certifications, which is much commonplace across the country when it comes to reciprocity. The contract is not specific to any certification, just the job posting. So, of course, I'm not here to prove the case, Your Honors. I am simply here to ask for possible arguments so that my attorney and I can go back to the district court and be heard. And, in effect, it is only a decision that we were able to find. And during the research was that the opinion of the New York State Education Commissioner herself, who found that the intern certification was an equivalent regular district's leader certificate, which I did procure from the State Department of Ed. So my argument, at least in challenging the dismissal of the case, is that the State Department of Ed gave me the district-wide supervisory internship certificate that I complied with the contract. And for that, I'm saying that it should not have been dismissed, and that is basically my position. And all of that information was before the district court? Yes, in addition to other case-supporting law. All right. Oh, you don't want any rebuttals, so is there anything else you would like to tell us? I just think that, for the sake of the process, that we did what we were asked to do on multiple occasions. We got written documentation that we had met those compliances, and then to just be told arbitrarily that we're directed to do it, we get it. And then they say, oh, no, that's okay, we're going to fire you anyway. And then we got no compensation whatsoever. And when you're speaking about we, you're- Myself and Dr. Morrison, since we were done in tandem, yes. Thank you. Thank you, Your Honors. You can have a seat right beside the podium, thanks. Mr. Moore? Good morning, Your Honors. May it please the Court, Joel Moore for the Buffalo Public Schools District. Your Honor, this case at its heart really is a breach of contract case. There are three causes of action, which if time allots, I'll cover, but I'll focus on the breach of contract case initially. Mr. Moore, could you just-I'd like you to focus on that, and could you just explain if you believe there is any difference between this case and the companion case of Dr. Morrison other than the defamation claim, which is an additional matter here? I assume you mean besides my preference in outcome, which is that I don't- Yes, right, exactly. Particular panel was otherwise. Exactly. I mean, another panel of this Court had what looks to me to be exactly the same case involving- there were two people who in the press, in the action taken by the board, seemed to have been treated pretty much the same way. They were represented at least at one time. I'm not sure why Ms. Williams is pro se now, but they were represented by the same lawyer. They filed cookie-cutter complaints. They filed cookie-cutter briefs that are similar, and a panel of this Court decided the other case and said there are issues of fact about breach of contract. So is this one different, or you're just arguing, well, that was a summary order, so it can go down the memory hole and we can decide this case completely and consistently with the way our Court decided the last case? Your Honor, admittedly, the similarities are really extensive. There are very few differences between the two. So is there any difference in the contracts? I mean, in the Morrison case it seemed that there was a blank Exhibit B. Here I was unclear about whether the job description was in fact part of the contract and stapled to it or not. Dr. Williams says that it was not part of the contract. It was part of the application process and wasn't a physical part of the contract. Could you confirm that, or do you disagree? Your Honor, to the best of my knowledge, it was not physically attached. It's just a reference from the actual agreement to the job bulletin. So the document came out of, but it was part of the application package and not part of the ultimate contract that she signed, right? Correct, Your Honor. Okay, thank you. I'm sorry. The question is, is there some relevant distinction, including that possible one, which you've said isn't a distinction? Is there anything different about these two cases? So the only differences are, one, there's a defamation claim in this case that was not present in the other one. The other difference, I would say, is because Ms. Williams is pro se, there's an element that this Court could observe that they may not have observed with Dr. Morrison, and that is that Ms. Williams is obviously highly capable, highly educated and capable of reading and understanding the contents of a contract. And to that extent, contrary to Ms. Williams' position, I would say . . . You think the prior panel thought that Dr. Morrison, who I think also had advanced degrees, was not capable of reading a contract? No. What I'm suggesting, Your Honor, is that you actually can see Ms. Williams here, whereas you didn't have the benefit, or the panel didn't have the benefit of having Ms. Morrison here in the past. Her attorney came and represented her in that case. But my point is, and I made a similar argument with regard to Ms. Morrison's case, is that these two women are highly intelligent, highly capable, highly educated individuals, capable of negotiating a contract. And to the extent that there's been a narrative where there's a big and bad district, if you will, represented by me and my three colleagues, as opposed to one of the doctors, I suggest to you, I submit to you, that there was not a disparity of ability to negotiate under the circumstances. The district knew the facts in each case. The district hasn't taken the position that there was any dissembling, or that they were advised that the certificate that was referenced in the job application was possessed by Dr. Morrison or Dr. Williams, right? No. So the district was aware, hired Dr. Williams, and proceeded to compensate her, and she participated and she followed the district's directions to obtain various other certificates in the meantime. And that is correct, Your Honor. The distinction I want to draw, and once again I drew it in the Morrison case, was one, district employees, including actually myself, are often encouraged to go out and get various trainings. So to the extent that Dr. Morrison, excuse me, Dr. Williams, obtained other types of training, those also betressed her position as a- She was getting certificates. Yes. She was doing programs to get certificates that she had been advised, as she alleges, might serve as an equivalent to the one listed, right? Your Honor, the distinction I would make is I don't think she was advised that they would serve as a replacement. They would simply be useful in her position, but not a replacement for the certificate that we needed her to have and that was bargained for as part of the contract. That's the distinction I would make. Simply because you've sought training or you've been assigned to do training here and here does not necessarily mean that it satisfies the core training that was bargained for in the contract initially. That's the distinction I drew in Morrison, and I'd also draw it here. And why didn't the, why should we look at Buffalo as having waived any, I mean, there's a non-waiver and no oral waiver provision in the contract. Nonetheless, we have a course of dealing here over a period of months. An individual from Florida who came to Buffalo in reliance on the offer made by the city was retained and worked for six months, was it? Seven months? Just over a year. And followed every direction that the district made as recounted by Dr. Williams. So why shouldn't we treat that course of conduct as having waived this condition? Your Honor, I'm glad you asked that question and really when you look at the agreement, there are three particular clauses in the agreement that I think are important to this case as well as to the Morrison case. One is the termination of agreement by operation of law. One is the written agreement portion and one is the non-waiver clause which you just mentioned. The termination of agreement by operation of law reads as follows, if the chief of curriculum assessment and instruction fails to maintain any certifications or qualifications required for this position, i.e., qualifications required by the Department of Civil Service or State Education Department, then this agreement shall immediately become null and void. I'm aware of that, but I just referenced. But I'm asking you why shouldn't we treat the course of conduct notwithstanding this? I mean the district is also in a good position to negotiate and to know the terms of the contract it had signed,  Well, Your Honor, I would suggest to you that it's not acting inconsistently and I'd say in addition to the language that I just specified, when you read that in light of the entire contract, particularly the no waiver clause, what it allows the district to do is hire a qualified candidate like Ms. Williams, who does not have the record with certifications, but that we recognize that she brings some great things to the table. And what we do in that case is we say, all right, you come in, you get the state required certifications in order to meet the state qualifications, and then you get to work on those things that we know that you have an excellent background or seem to have a good capability of doing. But what the no waiver clause says is even if we wait a year, and in fact there's case law out there, even if there's a case out there where a company didn't enforce the waiver clause for 20 years, but in our case we're looking at eight months. What we're saying is we'll give you some time to get up to par with these certifications, and yet at some point, if we so choose, we have the option of enforcing these clauses, and in this case that's what we did. She had eight months, in excess of eight months. Did you make that explicit to her? I mean, does the record show whether you made that explicit? You know, we're hiring you, we recognize you don't have the certifications needed, but we're going to work with you and see what happens. Your Honor, the record does not show that there was an explicit conversation had to . . . Wasn't that problematic to some extent in light of how this court ruled in the Morrison case? And I don't know, maybe you . . . Sorry, let's just take a little reprise from this. What's the state of the Morrison case? Has that been back in front of Judge Geraci? It is back in front of Judge Geraci. Geraci, I mean, sorry. But no disposition, no further disposition? No. In terms of timing, it's about two months ahead. We argued in front of you about two months ago, so it's not too far down. Lose track of time. It's the other end of the summer, right? I understand, yeah. Okay. So what I want to ask about then, Mr. Moore, is if . . . Well, I guess, sorry, the question I had, and I apologize. The question I had was, well, even if a person is working on her certifications, wouldn't you agree that the school district couldn't pull the plug on her if she's in the middle of that? Well . . . Because it's said, come on in, we'll let you work. We're going to waive this, but we've got this no waiver clause, so essentially we can stop waiving this any time we want to, even if you're doing what we ask you to do. And to your point, Your Honor, the reason I would disagree would be because potentially, in a district like ours where it is so important to have highly qualified individuals, we could miss out on an exceptional candidate if we did not bring that candidate in while he or she were available, and then try and make some timing provisions in order for he or she to get caught up with state certifications and requirements. And so here we don't specify. We don't come in and we say you have one year to do it. Circumstances may be such that it can be done in six months. Circumstances may be such that it can be done in two years. And so we don't specify the time. But the expectation, at least for the applicant going in, is you've signed this contract, you've bargained for these particular terms, one of which is to have this certificate. You don't have that. You understand you don't have that, so it's important for you to get on it. I think what's also important – Was there any indication in this record that the folks who hired Dr. Williams said to her, you understand that you have this qualification, we're letting you start without it, but you have to make adequate progress towards this or we will terminate your employment. Well, Your Honor, the application for the job specified the need for the certificate. Right, but what I'm saying is you're saying, and it seems to me a perfectly reasonable proposition in the abstract, that somebody can be hired without a certification and then they're supposed to make progress to get it because, as you say, you need to be able to hire people provisionally without that, and then everybody works together to make sure the person gets it. And if they screw up or turn out not to be able to or not to be interested in doing it, then you can pull the plug. But that doesn't sound like this case. I mean, I'm mistaken to believe that Dr. Williams negotiated with one group of people and then there's a political change and they go out and the new people say, the old regime hired unqualified people, we don't want them anymore. Is that not what happened here? Your Honor, I would argue that that's not what happened. Well, first of all, is it objectively the case that what happened here was that the people who negotiated with Dr. Williams and hired her are different than the people who pulled the plug? No, Your Honor, and let me clarify what I mean by that. Some of the individuals who hired and interviewed Dr. Williams still currently are leadership with the district. However, the superintendent who ultimately made the call to hire her, there is a newer superintendent now, and I believe there's actually been two new superintendents since that superintendent. In addition, the former board member who specific allegations were brought regarding the defamation claim, he is no longer a member of the board. So some of the board dynamics have changed, but some of the leadership, including some that interviewed Dr. Williams, are still leadership with the district. And did anyone ever say to Dr. Williams, as far as the record reflects, you know, you're supposed to be working on this certificate and we don't see you making any progress or anything like that? Your Honor, to the best of my personal knowledge, that did not happen. But I do want to point out a timing issue, and it's somewhat to Judge Hall's point. When you look at 8 months we're in, but as Ms. Williams pointed out, Dr. Williams pointed out, it was a 24-month contract, so you're actually a third of the way through the contract already. So when the inquiry is raised, how much time should you give an individual? Did anyone say to her, even at the time that she was terminated, the reason you are being terminated is because in the last 8 months you have not been working towards a certificate, or was the argument not you were unqualified when you were hired by people who shouldn't have hired you? The board made a specific point during the termination and is in the appendix. The board makes a specific point to specify that it is not the job ethic or anything to do with that. This should not negatively reflect upon Dr. Williams or Dr. Morrison the reasons they were terminated for the absence of a certificate and that alone. The absence of the certificate, not the failure to work towards a certificate during the 8 months that they've been working here. Your Honor, I would suggest that one is part of the other. Okay. Well, that would be an interesting fact question. I'll look forward maybe someday to seeing you present that to a jury and try to sell it. Your Honor, if I could point out just a couple more things. I know I'm well past time. But with regard to the breach of contract claim, if you should take the same position you did in Morrison and send it back down to the court, we'd like you to consider that the board itself, the district, was the individual that hired Dr. Williams, as was the case with Dr. Morrison. She, however, has sued the individual board members as well. They were not in contract with her as a result. At least we're arguing that they should certainly be dismissed individually with regard to the breach of contract. Is that a point that was raised to the district court? It was not in the district court decision. It may be in the papers, honestly, Your Honor. And you would still have the opportunity to raise that in the district court, but it's not something the district court ruled on in this case. It is not something the district court specifically spoke to in this case. Also, with regard to the defamation claim, which is specifically the one board member, that was a board member I alluded to that was there. The lower court also granted motion to dismiss with regard to that cause of action. And the logic behind that was that there wasn't a false statement because there was a breach of contract, which may or may not be in play here. But the second portion of the rationale behind why the lower court dismissed that cause of action was because the plaintiff's complaint failed to specify the particularities that should be associated with a defamation claim. And so I'd like to renew that argument, specifically pointing out that it was proper to dismiss the defamation claim and that if you look at the different language that is specified in the complaint, rarely ever do you get a time and place. And also, you have to go through hurdles upon hurdles upon hurdles to draw the conclusions that the plaintiff has in this case. It does not necessarily directly reference her, and I realize I'm speaking with regard to several statements right now, but it doesn't recognize her all the time. Other times, the plaintiff specifically says that they're half-truths, meaning obviously that at the very least, per her concession, they're partially true. And so that's not the proper place for a defamation claim. And so we'd ask that you do affirm the lower court's position on that. On the Morrison case, which I assume you may follow at this point, the negligent termination was dismissed as well. So we'd ask that you follow the same course of action with that as well. Thank you, Mr. Moore. Ms. Williams, I know you didn't ask for rebuttal, but Mr. Moore's had quite a few minutes up there. Is there anything else you want to tell us at this point? Thank you, Your Honors. The only thing I'd like to add is that there was not a lag in my pursuit of the certification. Upon hire, I did the online process, as is done commonly through all employees, with the State Department of Ed. It was then completed, and the district acknowledged receipt of that certificate and sent me a letter saying that I had received that, that I had met compliance within the respect of the position. So I continued to work. It became a knowledge to myself and to Dr. Morrison later in the spring of 2014 that what was acknowledged as compliant was no longer set and that we then had to pursue an additional certificate. Not knowing the difference of a school level, district level, or other, we just applied to the state, and that's what they returned back to us. Then it was acknowledged by the district that it met compliance for the job responsibilities that I was performing. Is that piece of information, and I want to apologize to you personally. I've been calling you Ms. Williams, and I should have been calling you Dr. Williams, but is that piece of information in the record? I believe it is by my attorney, that we have secured the process and that I have secured . . . The acknowledgment that you have secured? Yes. Thank you. Thank you. Thank you very much. Thank you both, and we'll reserve decision in this case. The final case on the calendar is Boone v. United States, and that case is on submission, so I will ask the clerk please to adjourn the court. The court is adjourned.